IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 21, 2015

**STATE OF TENNESSEE v. DARRYL L. WEEMS**

**Appeal from the Criminal Court for Sullivan County**
**No. S62233     R. Jerry Beck, Judge**

_____

**No. E2015-00006-CCA-R3-CD – Filed September 14, 2015**

_____

The Defendant, Darryl L. Weems, pleaded guilty to attempt to obtain a controlled substance by fraud, forgery, and identity theft, in exchange for an effective six-year sentence with the trial court to determine the manner of service. Following a sentencing hearing, the trial court ordered the Defendant to serve his sentence in the Department of Correction. On appeal, the Defendant asserts that the trial court erred in denying his request for alternative sentencing. After a thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

David S. Barnette, Jr., Kingsport, Tennessee, for the Appellant, Darryl L. Weems.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Barry Staubus, District Attorney General; and Josh D. Parsons, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

The Sullivan County Grand Jury indicted the Defendant, Darryl Weems, on one count of attempt to obtain a controlled substance by fraud, one count of forgery, and one

count of identity theft.  The Defendant pleaded guilty to all three charges.  At the plea colloquy, the State made the following offer of proof:

> On August 30, 2012, Detective Micah Johnston of the Kingsport Police Department went to the Walmart on West Stone Drive in the City of Kingsport, Sullivan County, Tennessee, in reference to a prescription that had been passed July, 29, 2012, from Dr. John Tasker's office, for 180 oxycodone, 30 milligrams.  The name on the prescription was for Darryl Saylor.
>
> He checked with Dr. John Tasker's office and found that the prescription was a forgery, and that . . . Darryl Saylor had never been a patient of Dr. Tasker's.
>
> Through an interview with Misty Gardner, the Defendant was developed as a suspect, and compared with the security video from Walmart, was identified to be the person who passed the prescription at Walmart on July 29, 2012.

Pursuant to his plea agreement, the Defendant received concurrent sentences of six years for attempt to obtain a controlled substance by fraud, three years for forgery, and six years for identity theft.  At the alternative sentencing hearing, the trial court reviewed the Defendant's criminal history as set forth in the presentence report.  The court noted the Defendant's prior convictions for attempted burglary, aggravated burglary, theft, and other misdemeanors.

The presentence report revealed that the Defendant attended school through the ninth grade.  The Defendant had not completed his GED, but he completed a substance abuse educational program while incarcerated in Hardeman County Correctional Facility.  In the presentence report, the Defendant described his physical health as fair, stating that his life of working with loud equipment resulted in hearing issues.  He indicated he had no physician and did not take any prescribed medication.  The Defendant described his mental health as fair but reported that he had not sought any mental health treatment.

The presentence report also revealed the Defendant's employment history.  Since October 2012, the Defendant worked for River Gardens of Johnson City, Tennessee as a laborer, earning fifteen dollars per hour.  Additionally, the Defendant worked off and on as a laborer for the landscaping business of a family friend.

The Defendant's ex-wife, Nikki Concepcion, testified that she and the Defendant had three children together and currently lived together.  She stated that the Defendant assisted her by providing money for bills and by taking care of her children when she was

unable to do so. Ms. Conception explained that she had four children living with her at the time of the hearing, ages fifteen, thirteen, eleven, and two. She testified that her fifteen-year-old daughter suffered from two heart conditions. She stated that she was unable to care for her children alone because she suffered from chronic obstructive pulmonary disease, emphysema, liver disease, and kidney disease and was often in the hospital. Ms. Concepcion testified that the Defendant was the primary breadwinner of the household and that, despite her health problems, she did not receive any government disability assistance. Ms. Concepcion described the Defendant's work ethic as "great."

Lena Cook, the Defendant's sister, testified that the Defendant helped care for their eighty-four-year-old mother. She explained that the Defendant provided money when he was able to do so, performed handy-work on their mother's home, and assisted in moving their mother in and out of the car during visits to the doctor's office. She reported that her boyfriend was occasionally available to assist in these tasks, but the responsibility fell primarily on her and the Defendant. Ms. Cook further testified to the Defendant's strong work ethic.

Lena Cook's boyfriend, George Leroy Whistine, testified that he had known the Defendant for approximately eight years. He explained that he occasionally worked with the Defendant. Mr. Whistine testified to the Defendant's numerous skills as a handyman, noting that the Defendant specialized in landscaping. Additionally, Mr. Whistine testified that the Defendant had a positive work ethic and that the Defendant would "work you in the ground."

The Defendant testified that he lived with Ms. Conception in Johnson City, Tennessee. He helped Ms. Conception pay bills and assisted in caring for her children. The Defendant also stated he helped his sister and mother. He explained that he replaced the plumbing in their house, cleaned their gutters, mowed their yard, and assisted his mother when she travelled to and from the doctor's office.

The Defendant testified that his criminal conduct began at a young age. He recalled committing auto burglaries as an eighteen-year-old, for which he was granted probation. The Defendant admitted that his probation was revoked when he absconded from supervision. Next, the Defendant testified that he was convicted of numerous crimes from 2004 and 2005, including four convictions for aggravated burglary, one conviction for burglary other than a habitation, and seven convictions for theft of property. The Defendant testified that he received probation for those convictions and that he violated probation three times. The Defendant attributed his involvement in the string of crimes to hanging around with the wrong people.

The Defendant then testified to his conduct in the instant case. He explained that he was between jobs at the time of the offenses and that he felt depressed. He testified

that an acquaintance from prison began showing up at his home and offering him money to pass fake prescriptions. The Defendant stated that he eventually gave in to the man's persistence and agreed to go through with the man's plan. The Defendant acknowledged that he exercised poor judgment. Additionally, the Defendant testified that he offered to cooperate with authorities and provide information about his fellow conspirators.

The trial court reviewed the presentence report and noted the Defendant's extensive criminal history. The trial court stated it was not considering the Defendant's juvenile record. However, even without considering his juvenile record, the trial court noted that the Defendant had a long criminal record. The court also noted that the Defendant had been placed on probation numerous times and that he had a history of probation violations. The trial court stated that it had considered all the possible alternative sentences, including Community Corrections and split confinement, and concluded that the Defendant was not a proper candidate for alternative sentencing. Consequently, the court ordered the Defendant to serve his sentence in confinement.

## Analysis

On appeal, the Defendant claims that the trial court improperly weighed several mitigating factors set forth in Tennessee Code Annotated section 40-35-113 and erred when it denied his request for alternative sentencing.

Although the statutory language continues to describe the applicable appellate review for sentencing decisions as de novo with a presumption of correctness, Tenn. Code Ann. § 40-35-401 (2014), the 2005 revisions to the Sentencing Act "effectively abrogated the de novo standard of appellate review." State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). Following the 2005 amendments, sentences imposed within the statutory range that reflect a proper application of the purposes and principles of sentencing are reviewed under an abuse of discretion standard with a presumption of reasonableness. Id. A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). In State v. Caudle, the supreme court expanded its holding in Bise to trial courts' decisions regarding alternative sentencing. State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

To determine the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar

offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b) (2014); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative. See Tenn. Code Ann. § 40-35-103(5) (2014). Additionally, the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(2), (4) (2014). The foremost purpose of the Act is to promote justice. Tenn. Code Ann. § 40-35-102 (2014).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2014); Bise, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." Bise, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2014), Sentencing Comm'n Cmts.

Pursuant to Tennessee Code Annotated section 40-35-102, "[e]very defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1) (2014). Further, in recognition of the fact that state prison capacities and resources are limited, "felons convicted of the most severe offenses, possessing criminal histories evincing a clear disregard for the law and morals of society and evincing failure of past efforts at rehabilitation" are given first priority for sentences of incarceration. Tenn. Code Ann. § 40-35-102(5) (2014).

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2014).

Although the trial court should consider enhancement and mitigating factors when making its determination, the statutory factors are advisory only. Bise, 380 S.W.3d at 704; Carter, 254 S.W.3d at 343-44. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Carter, 254 S.W.3d at 343. A claim that the trial court improperly weighed the enhancement or mitigating factors is no longer a ground for appeal. Id. at 344. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Bise, 380 S.W.3d at 706. This court may not disturb the sentence even if it would prefer a different result. See Carter, 254 S.W.3d at 346.

Here, the Defendant contends that the trial court failed to properly consider numerous mitigating factors. Specifically, the Defendant claims that the trial court failed to consider that the Defendant assisted authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses; that the Defendant assisted in finding property or persons involved in the crime; that the Defendant acted under duress or domination of another person; that the Defendant was motivated by a desire to provide necessities for his family or himself; and that the Defendant has a positive work history. Additionally, the Defendant argues that the trial court afforded too little weight to the fact that the Defendant showed remorse for his actions and that the Defendant had "family problems occurring at the time of the hearing." As noted above, improper weighing of enhancing or mitigating factors is no longer a ground for appeal. See Carter, 254 S.W.3d at 344. Instead, we must determine whether the sentence imposed was consistent with the purposes and principles of sentencing. See id. at 343.

In this case, the trial court addressed the confinement considerations and found that the Defendant had multiple prior felony convictions spanning 1989 to 2005. Additionally, the trial court found, even excluding the one technical violation of probation, that the Defendant repeatedly failed to comply with the conditions of prior sentences involving his release into the community. The trial court stated that it had considered all the possible alternative sentences, including Community Corrections and

split confinement. However, based on the Defendant's prior criminal history and probation violations, the trial court concluded that the Defendant was not a proper candidate for alternative sentencing. The evidence on record supports the sentencing decision of the trial court, and the Defendant has failed to establish an abuse of discretion.

## **Conclusion**

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE